## Peters' Administrator v. Peters.

(Decided March 20, 1928.)

### Appeal from Owsley Circuit Court.

1. Gifts.—Father's withdrawal of money from his own account and putting it in new account in name of his son held not to constitute valid gift where son was never notified by father of deposit, never received passbook or deposit slip, and learned of deposit only after father's death, since there was no delivery or acceptance essential to constitute gift and father did not put deposit irrevocably beyond his control.

2. Banks and Banking.—If bank in which father placed deposit of money in son's name had implied authority to notify son of deposit and so perfect gift by son's acceptance, bank's authority was revoked by father's death, preventing completion of gift.

3. Gifts.—"Gift inter vivos" may never be upheld upon evidence which merely establishes an intention to give, but there must be a delivery of the gift to the donee and an acceptance by him, by which the title passes and gift is made irrevocable.

A. W. BAKER for appellant.

C. W. HOGG for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Reversing.

On March 3, 1926, H. D. Peters deposited $1,975 of his money in the name of his son, appellee, Emery

Peters, in the Winchester Bank, of Winchester, Ky. He died in June following. This action was instituted by appellant, as his administrator, to recover from appellee, Emery Peters, this $1,975, subject to a credit of $125 paid by the latter on the burial expenses of deceased. Appellee resisted recovery by claiming that the deposit of the money in his name was a gift to him. The trial below resulted in a judgment dismissing the petition, and appellant has appealed.

The facts are undisputed. The $1,975 was the property of H. D. Peters. He lived in Owsley county, Ky. The money was on deposit to his credit in the Winchester Bank, at Winchester, Ky. Pursuant to a letter written by Mr. Peters to the bank, the $1,975 was withdrawn from his account and a new account in the name of Emery Peters was opened. This was all of the money to the credit of H. D. Peters, and Emery Peters prior to that time had not had an account with this bank. It is not altogether clear whether this sum was placed to the credit of Emery Peters on time deposit or in an open checking account. We conclude, however, that it was a checking account. The passbook or duplicate of the deposit slip which was issued by the bank was received by H. D. Peters and remained in his custody until his death. He appears never to have notified appellee, Emery Peters, of the fact that he had deposited the money in his name and did not deliver to him the passbook or deposit slip showing that fact. Appellee, Emery Peters, did not learn in any way until after the death of his father that he had deposited the money in his name. About a week after the death of his father, when the children were looking through his personal effects they discovered the bank passbook or deposit slip among his papers. This was appellee's first information on the subject. The question presented by the appeal is whether, under these facts, there was a valid gift inter vivos by H. D. Peters to appellee, Emery Peters.

The elements of a gift inter vivos have often been written. 28 Corpus Juris, 621, defines it thus:

> "A gift inter vivos, as its name imports, is a gift between the living. It is a contract which takes place by the mutual consent of the giver, who divests himself of the thing given in order to transmit the title of it to the donee gratuitously, and the donee, who accepts and acquires the legal title to it. It operates, if at all, in the doner's lifetime, imme-

diately and irrevocably; it is a gift executed; no further act of parties, no contingency of death or otherwise is needed to give it effect.''

Combs v. Roark's Adm'r, 221 Ky. 679, 299 S. W. 576, is perhaps the latest utterance of this court on the question. It was there said:

"To establish such a gift there must be a donor competent to make it, and an intention on his part to make it; a donee capable of taking a gift; the gift must be complete with nothing left undone; the property must be delivered by the donor, must be accepted by the donee, must go into immediate and absolute effect, must be gratuitous, and, in the case of gifts inter vivos, must be irrevocable.''

See also, Foxworthy v. Adams, 136 Ky. 403, 124 S. W. 381, 27 L. R. A. (N. S.) 308, Ann. Cas. 1912A, 327; Stark v. Keeley, 132 Ky. 376, 113 S. W. 498; Reynolds v. Thompson, 161 Ky. 772, 171 S. W. 379. Numerous other opinions from this court may be found cited in the opinions referred to.

Do the facts of this case bring the transaction involved within the foregoing definitions of and standards of measurements for gifts inter vivos? Does the mere fact that a person deposited his own money in a bank in the name of another afford sufficient evidence that by so doing he intended to give the money to the other, or that thereby he parted with his title to it, or vested its title irrevocably in the other, or that the other accepted it as a gift? It would seem difficult to conclude that there has been acceptance of a gift by the donee who has no knowledge at all of the transaction. It would seem to be difficult to infer from the mere fact that a person deposits his money in a bank in the name of another that he intends thereby to give it to the other. If, however, it should be assumed that by so doing he evidences the intention to donate the money involved to the person in whose name it is deposited, would something else not have to appear to furnish evidence of the delivery of the gift to the donee and acceptance of it by the latter? If in the case we have it be assumed that, when H. D. Peters deposited his money in the name of appellee, it was his intention to give it to his son, it would seem difficult to conclude that by the mere act of having deposited it in the name of his son he parted with all dominion

and control over it and lost the right to change his mind and recover the money for himself before notifying his son what had been done and before the latter had accepted the gift.

The question here presented does not appear to have been considered heretofore by this court, and but few cases directly in point are to be found. In Telford v. Patton, 144 Ill. 611, 33 N. E. 1119, the facts were that Samuel Telford, on May 1, 1889, deposited $2,600 with the First National Bank, of Springfield, Mo., in the name of L. J. Patton. This was a time deposit and a certificate in the name of L. J. Patton was issued and delivered to Samuel Telford, the depositor. Telford was a bachelor, 60 odd years of age, and L. J. Patton was a lady then about 50 years of age, who had been his lifelong acquaintance and friend. She knew nothing about his having deposited the money in her name, and he retained in his possession the certificate of deposit until his death in January following. The controversy there was whether under the facts there was a gift of the money to her. It was held that such was not the case, and the following quoted from that opinion discloses the reasons actuating the court:

"We have thus reviewed a few of the cases, which hold that there may be a valid gift of the fund deposited, where the deposit is made in the name of a third party, although there has been no delivery of the deposit book. A careful examination of these cases will show that they are distinguishable from the case at bar. But we think that the weight of authority sustains the opposite view, namely, that, where the deposit is in the name of a third person, and there is no delivery of the bank book, the title to the fund does not pass to such person in the absence of any declaration of trust, or circumstances showing an intention to vest the title. This subject has been recently reviewed in an exhaustive opinion by the New York Court of Appeals in the case of Beaver v. Beaver, 117 N. Y. 421 (22 N. E. 940, 6 L. R. A. 403, 15 Am. Stat. Rep. 531). We concur in the views expressed in that case, which are supported by the authorities hereinafter mentioned. There, a father made a deposit in a bank in the name of his son and received a passbook with a similar entry, which he kept in his possession until his death, it not appearing that before his death, his son ever had

possession of the passbook, or knew of the deposits.
The solution of the question, whether the deposit be-
longed to the son, or to the executor of the father's
estate, is made to depend upon the question, whether
there was a trust in favor of the son as to the money
deposited, or a gift to him of such money.    The
court held, that there was no trust because there was
no declaration of trust in terms at the time of the
deposit or afterwards, and that none could be im-
plied from a mere deposit by one person in the name
of another; that to constitute a trust there must be
either an explicit declaration thereof, or circum-
stances, showing beyond a reasonable doubt that one
was intended to be created.    Upon the subject of a
gift the court says: 'The elements necessary to con-
stitute a valid gift are well understood. . . .
There must be on the part of the donor an intent to
give and a delivery of the thing given, to or for the
donee, in pursuance of such intent, and on the part
of the donee, acceptance. . . . In case of bonds,
notes or choses in action the delivery of the instru-
ment which represents the debt is a gift of the debt,
if that it the intention. . . . The intention to give
is often established by most satisfactory evidence,
although the gift fails.    Instruments may be ever so
formally executed by the donor purporting to trans-
fer title to the donee, or there may be the most ex-
plicit declaration of an intention to give, yet, unless
there is delivery, the intention is defeated. . . .
We are of the opinion that there are lacking in this
case two of the most essential elements to constitute
a gift . . . viz., an intent to give and a delivery
of the subject of the alleged gift. . . . The form
of the account is the essential fact upon which the
plaintiff relies.    It may be justly said, that a de-
posit in a savings bank by one person, of his own
money, to the credit of another, is consistent with an
intent on the part of the depositor to give the money
to the other.    But it does not, we think, of itself,
without more, authorize an affirmative finding, that
the deposit was made with that intent, when the de-
posit was to a new account, unaccompanied by any
declaration of intention, and the depositor received
at the time a passbook, the possession and presenta-
tion of which, by the rules of the bank, known to the
depositor, is made the evidence of the right to draw

the deposit. We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons, with no intention of divesting themselves of ownership. It is attributable to various reasons; . . . the desire on the part of many persons to veil or conceal from others knowledge of their pecuniary condition. In most cases where a deposit of this character is made as a gift, there are contemporaneous facts or subsequent declarations by which the intention can be established, independently of the form of the deposit. We are inclined to think that, to infer a gift from the form of the deposit alone would, in a great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed, and defeat the real purpose of the depositor. . . . We think for the reasons stated that the plaintiff failed to establish a gift. . . . The question of gifts in connection with deposits of savings banks has of late years been frequently considered by the courts in various states. The preponderance of authority seems to be in favor of the views we have expressed.' Young v. Young, 80 N. Y. 438 (36 Am. St. Rep. 634); Jackson v. Railway Co., 88 N. Y. 520; In re Crawford, 113 N. Y. 560 (21 N. E. 692, 5 L. R. A. 71); Williams v. Guile, 113 (117) N. Y. 343 (22 N. E. 1071, 6 L. R. A. 366); Ridden v. Thrall, (125 N. Y. 572, 26 N. E. 627, 11 L. R. A. 684, 21 Am. St. Rep. 758), supra; Robinson v. Ring, 72 Me. 140 (39 Am. Rep. 308); Burton v. Bridgeport Savings Bank, 52 Conn. 398 (52 Am. Rep. 602); Marcy v. Amazeen, 61 N. H. 131 (60 Am. Rep. 320); Schick v. Grote, 42 N. J. Eq. 352 (7 A. 852); Scott v. Berkshire Co. Savings Bank, 140 Mass. 157 (2 N. E. 925); 8 Am. & Eng. Enc. of Law, tit. 'Gifts,' pp. 1324 to 1330; 3 Pom. Eq. Jur. secs. 1148, 1149, and notes; Brabrook v. Bank, 104 Mass. 228 (6 Am. Rep. 222); Broderick v. Bank, 109 Mass. 149.''

Farmers' & Merchants' State Bank of Marion, Iowa, v. W. H. Gleason, 75 Ill. App. 251, and Williams v. Chamberlain, 165 Ill. 210, 46 N. E. 250, are similar cases, and in each it was held that the one who deposited his funds on time deposit in the name of another without the knowledge of the other did not thereby give the money to the other. The Patton opinion, it will be ob-

served, refers to and quotes copiously from Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. Stat. Rep. 531. The deposit in that case was made by a father in the name of his son in a savings account, and it appeared that the son had no knowledge of the fact and the father retained possession of the passbook. It was held, as the quotation from the Telford case, supra, discloses, that there was no gift. Numerous opinions are to be found dealing with deposits by a person of his funds in the name of another in savings accounts, and these transactions have never been held to be gifts inter vivos unless the evidence disclosed that the donee had knowledge of the transaction and accepted the gift. Meriden Trust & Safe Deposit Co. v. Miller, 88 Conn. 157, 90 A. 228, L. R. A. 1915B, 481, Ann. Cas. 1916D, 917; Succession of Zacharie, 119 La. 150, 43 So. 988; Eastman v. Woronoco Savings Bank, 136 Mass. 208; and McKinnon v. First National Bank of Pensacola, 77 Fla. 777, 82 So. 748, 6 A. L. R. 111—are perhaps typical of this class of cases. The Florida case dealt with infant donees, and the principle that, if the gift to an infant donee be beneficial, the law will presume acceptance aided the court in concluding that the transactions there involved were gifts.

The cases referred to, supra, from Illinois, dealing with deposits of money on special deposit, evidenced by a certificate of deposit are to be distinguished from the case we now have before us, because the certificate of deposit which was the evidence of the debt owing by the bank was the subject of the alleged gift and appeared never to have been delivered. The Beaver case from New York dealing with a savings bank account, and other like cases, are also to be distinguished, because under the peculiar custom with reference to such accounts the passbook is the evidence of the bank's indebtedness to the depositor and is required to be presented when the fund is withdrawn. Hence its delivery or nondelivery plays the principal part in cases dealing with savings account deposits. While the cases are to be distinguished in the particular mentioned, yet on the question whether the mere fact that a person deposits his money in a bank in the name of another, without the knowledge of the other, is evidence of his intention to donate the fund to the other, the cases, supra, are authority to the effect that such facts do not afford evidence of that intention.

An opinion directly in point is that of Branch v. Dawson, et al., 36 Minn. 193, 30 N. W. 545. There was involved in that case a deposit of $5,000 in the name of Mrs. William Branch with Dawson & Co., bankers. There was a controversy as to whether the money deposited was hers or that of her husband. The evidence was that if it was his money which was deposited in her name he never communicated the fact to her or said anything about giving her the money and did not give her possession of the passbook or any other evidence of the deposit. Mrs. Branch contended that, notwithstanding those facts, by the mere act of placing his money to her credit on the books of the bank, Branch's title to and control over it entirely ceased and it became her absolute property. The court said:

"This involves the only question of any importance in the case. In our opinion, the instructions given by the court embody correct principles of law. An incomplete voluntary gift creates no right which can be enforced. A gift requires the assent of both minds, as much as a contract. To say that a conveyance or transfer of property by way of gift imports an agreement is only to say that ownership cannot be thrust upon a person against his will. Knowledge of the gift on the part of the donee at the time it is made may not be essential in order that it may take effect. If the act of transfer be complete on part of the donor, subsequent acceptance by the donee, before revocation, will be sufficient. But a mere deposit of the property by the depositor, in the name of another, with a third person, will not of itself be sufficient to pass the title. This act is one entirely between the depositor and the bailee, to which the person in whose name the deposit is made is in no way a party. It would, of itself, no more pass title than would the execution of a deed by a person, and the placing it on record by him, without the knowledge or consent, express or implied, of the person named as grantee. Brabrook v. Boston Five Cents Savings Bank, 104 Mass. 228 (6 Am. Rep. 222); Sherman v. New Bedford Savings Bank, 138 Mass. 581; Robinson v. Ring, 72 Me. 140 (39 Am. Rep. 308.''

The reasoning of the court in the foregoing opinion appears to this court to be sound. Applying its princi-

ples to the case we have, though H. D. Peters may have intended when he deposited his money in the Winchester Bank in the name of his son, Emery Peters, to give it to his son, by the mere act of so depositing it he did not lose dominion and control of it. He had the right at any time before notice of what had been done was brought home to his son to change his mind and recover the fund. Until the son had knowledge of the transaction and accepted the gift it was a transaction wholly between H. D Peters and the bank. The gift was never consummated in the lifetime of H. D. Peters by his imparting to his son knowledge of his intention to give him the fund on deposit in the bank and by acceptance of it upon the part of the son. If the bank, by the transaction, had implied authority from H. D. Peters to notify the son of the fact that the money had been placed on deposit in his name and to bring about acceptance of the gift by the son, this authority terminated when H. D. Peters died. The authority of the bank to represent the donor in the matter of perfecting the gift, if it was his intention by depositing the money in the name of his son to give it to him, was revoked by the death of the donor.

Eversole v. First National Bank of London (Ky.) 51 S. W. 169, 21 Ky. Law Rep. 244, is a case from this court dealing with a deposit by a husband of funds to the credit of his wife. The elements of the gift inter vivos were made to appear by the evidence. It was said:

> "If the money deposited to her credit did not belong to her, or was not deposited to her credit for a valuable consideration, we are authorized, from the facts and circumstances of the case, to conclude that it was intended to be a gift to her, and the essentials which render the gift valid exist. The gift was to go into effect at once. It was delivered to the bank for her, placed to her credit, and she accepted it. We think the court properly adjudged the money to belong to Mrs. Pace."

It may be that the record affords sufficient evidence, independent of the fact that H. D. Peters deposited $1,975 of his own money in the name of his son in the Winchester Bank, to authorize the conclusion that he intended by so doing to give this fund to his son, but a gift inter vivos may never be upheld upon evidence which merely establishes an intention to give. There must be a delivery of the gift to the donee and acceptance of it by

him. The title must pass from the donor to the donee and the gift must be irrevocable. The transaction here involved cannot be upheld as a gift for the reason that there does not appear to have been any delivery of the gift to the donee, either actual or symbolical, and no acceptance of it by him. The mere fact that H. D. Peters deposited his money in the name of his son did not put it beyond his control and vest it irrevocably in Emery Peters, his son.

For the reasons indicated, the judgment herein is reversed and the cause remanded, with direction that a judgment in conformity herewith be entered.

The whole court sitting.