## Weisenberger v. Corcoran.
(Decided Nov. 11, 1938.)

**324**

GEORGE BROADUS and R. F. PEAK for appellant.

SAMUEL S. BLITZ and ALFRED C. KRIEGER for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

Appellant, Theodore Weisenberger, filed suit in the Jefferson circuit court against appellee, Susanna A. Corcoran, alleging that he was the owner of, and entitled to the immediate possession of, two Portland Building and Loan Association bank books, numbered 1048 and 1049, covering an optional savings account in this building and loan association in the approximate

amount of $1,850, the exact amount being unknown to plaintiff. The building and loan association was made a party for the purpose of having it disclose the exact amount.

Plaintiff alleged that the defendant had possession of the books and was detaining them without right; that he had demanded the books from her and that she had refused to deliver same to him.

Defendant answered. Numerous demurrers, motions and amendments were filed completing the issue, and a jury trial was had which resulted in a verdict for the defendant; pursuant to this verdict it was adjudged by the court that the defendant be awarded the possession of the two books in controversy.

Plaintiff filed motion and grounds for a new trial which were overruled and he was given sixty days in which to prepare and tender his bill of exceptions, but no bill of exceptions was ever filed.

Appellant prosecutes this appeal from this judgment and the parties agree that the only thing before this court is whether or not the pleadings support the judgment. Such being the case, it is necessary to state the substance of these pleadings in order to ascertain whether or not the judgment is supported by them.

These pleadings, aside from the various demurrers and motions, consist of the petition and amended petition; the answer, as amended by two amendments—the second amended answer having been filed pursuant to a ruling of the court requiring the defendant to make her answer more specific and definite—and finally the reply.

The petition, as amended, states in substance that in the years 1928 and 1929, Nicholas Weisenberger, plaintiff's father, gave and delivered to plaintiff the two books in controversy and that plaintiff accepted them and is therefore the owner of, and entitled to the immediate possession of them; that the defendant has possession of the books and is detaining them without right, although the plaintiff had demanded that she deliver them to him.

The answer, as amended by the two amendments, denies that plaintiff is the owner of, or entitled to the possession of the books, or either of them. She admits,

by the answer, that she is in the possession of the books, but denies that she detains them without right and denies that the plaintiff is entitled to the books or either of them and denies that he has any right, title or interest in them.

It is further alleged in the answer as amended that plaintiff and defendant are a son and daughter of Nicholas Weisenberger, deceased; that sometime prior to January 10, 1933, she loaned her father $2,000, evidenced by note filed as an exhibit, which sum was used by him as part of the purchase price of a farm in Floyd County, Indiana, and that after the purchase of this farm she loaned her father an additional $500 and that her father agreed to give her a note for this sum, but through oversight no note was executed. This sum, she says, was advanced her father to enable him to purchase livestock and farm equipment. She alleges that her father, in order to secure the payment of said two sums to her, caused the conveyance of the farm to be made in her name and that she now holds the legal title to it, a copy of the deed being filed as an exhibit. She also alleges that the plaintiff took possession of the farm on February 2, 1934, and has retained the entire profits therefrom; that plaintiff has instituted an action in the circuit court of Floyd County, Indiana, in which he seeks to require her to convey the farm to him, claiming fee simple ownership thereof. She further alleges that in 1928 and 1929, her father purchased thirty shares of installment stock of the Portland Building and Loan Association and continued the necessary payments on this stock up to February 8, 1935, so that the present value of the stock, represented by the books in controversy is $1,858.32; that her father purchased the stock in the name of the plaintiff, but had made the payments himself; that within approximately two months prior to January 7, 1933, at the Floyd County, Indiana, farm, her father, in order to secure her for the money which he owed her, amounting to $2,500, desired to transfer this stock represented by the books to her and discussed the matter with plaintiff and that plaintiff authorized his father to execute in plaintiff's name the necessary instruments to effect said transfer to her; that pursuant to said authority, her father transferred the stock to her on January 8, 1935, by signing the name of the plaintiff to the necessary instruments to effect such transfer and

that since said time she has been, and is, the owner of the stock; that she received the stock as a credit on the indebtedness of her father to her and that she has a lien on the Floyd County, Indiana, farm to secure the payment of the balance of this indebtedness over and above the credit representing the value of the stock, the balance being $1,067, on the payment of which to her, she is ready and willing to execute to plaintiff a deed to the farm. She alleges that at all times mentioned her father was the actual owner of the two books in controversy; that such ownership was known to and admitted by, the plaintiff.

The reply denies the indebtedness of the father to defendant in the sum of $2,500 and all material allegations with reference thereto; denies that the father was the actual owner of the stock and denies all other material allegations of the answer as amended except that there is no denial that the stock was purchased by the father and that he made all payments thereon. There is no denial that the books were always in the possession of the father.

The question before us for decision is whether or not these pleadings, the substance of which is given above, are sufficient to support the judgment rendered in this action, the substance of which is also stated above.

Appellant assumes that this action is brought under Section 180 et seq. of the Civil Code, which is the chapter dealing with claim and delivery of personal property and specifying the procedure by which an order of delivery may be obtained. His argument is that the petition does not state a cause of action thereunder and we agree with him that it does not, several essential allegations necessary to obtain an order of delivery being omitted.

However, appellant is in error in this assumptio⁷ for no order of delivery was asked for or issued in this case and this action was an ordinary action for the recovery of personal property, namely, the two books in controversy.

An action for the recovery of specific personal property may certainly be brought without seeking an order of delivery and the petition in such action need not contain any of the allegations laid down in the above mentioned sections of the code as a prerequisite to ob-

tain such an order. An order of delivery is an ancillary remedy similar to an attachment and certain definite allegations to have same issued are required by the code just as certain essential allegations are required in order to justify the clerk in issuing an order of attachment.

However, a plaintiff suing for the recovery of specific personal property is not required to have an order of delivery issued anymore than a plaintiff suing for a specific sum of money is required to have an attachment issued. It will be seen therefore that this action was not filed pursuant to the above mentioned sections of the code.

The substance of appellant's petition is that his father purchased the stock in controversy, gave it to him by having it issued in his name and delivering the books representing the stock to him; that he is now the owner thereof and that defendant detained same from him after demand by him. This seems to us to state a good cause of action but even if it did not plaintiff is hardly in position to complain about a defect in his own petition. We fail to see how a plaintiff can be permitted to take advantage of a defect in his own petition after a trial and judgment against him.

If the defendant in the action below had contented herself with denying the allegations of the petition we could end this opinion here, but she did not do so and undertook to plead the facts showing her right and title to the books in controversy. Therefore, the real question before us is whether or not the allegations contained in her answer are sufficient, after trial and judgment, to support the judgment in her favor.

This answer, stripped of all unnecessary averments and all allegations containing matters in the nature of evidence, alleges that the father of plaintiff and defendant bought the stock and made all payments thereon, having it issued in the plaintiff's name; that he retained the books in his possession always and was in fact the real owner and that by the plaintiff's express oral consent, the father signed the son's name to the necessary instruments for the transfer of this stock and delivered the books to her for the purpose of enabling her to apply the stock as a credit on the indebtedness of the father to her.

If the father actually paid for the stock and retained the books himself with no intent to make a gift thereof to appellant, then the father was the real and actual owner thereof though the stock was taken in the plaintiff's name.

While the courts differ very greatly as to the real nature and character of stock in building and loan associations, for the purpose of this case, and indeed, generally, we may say that it is very similar in nature to a deposit in bank although many authorities hold that it does not create the relation of debtor and creditor as a bank deposit does. The exact nature is to be determined by an examination of the by-laws of the association.

A deposit of money in bank to the credit of another person does not operate as a gift inter vivos to such other person. In order that such deposit may operate as a gift, it must appear not only that the depositor intended a gift, but also that he executed his intention and completed the gift by acts sufficient to pass the title. Preston v. Preston's Adm'x, 245 Ky. 552, 53 S. W. (2d) 957; Collins, et al. v. Collins' Adm'r, 242 Ky. 5, 45 S. W. (2d) 811.

The allegations of the answer, which we must assume were proved on the trial, are sufficient to show that the father of these parties was the real and actual owner of the stock issued in his son's name and as such he had the right to turn this stock over to defendant to be applied on his indebtedness to her.

We hardly think, in view of this situation, it is material whether or not the plaintiff signed the necessary instruments required by the association for the transfer of this stock. The defendant being the actual owner of the stock, the plaintiff could be ordered by the court to sign the necessary papers effecting such transfer if such was necessary.

But going one step further, so that there may be no remaining doubt of any kind, plaintiff's oral authority to his father to execute these instruments was sufficient. The authority of an agent to execute a written instrument is only required to be in writing where it is required by statute. Parol authority is ordinarily sufficient to authorize an agent to execute a simple written instrument. It is true that in this state authority to

330

sign one's name as surety must be in writing and the Negotiable Instruments Act, Section 3720b-19, Kentucky Statutes, provides that authority of an agent to sign a negotiable instrument must be in writing, but we know of no provision of law requiring that authority to execute transfer of stock must be in writing. Indeed, the transfer, or non-transfer, of the stock had nothing to do with the rights of ownership as between the parties. As said by this court in the case of Banco Kentucky Company v. Weil et al., 258 Ky. 243, 79 S. W. (2d) 977, 981:

> "The thing in dispute was not the stock certificates, but the property which they represented, title to which had already vested in the respective parties upon the delivery and exchange of the stock certificates which were a symbol or paper evidence of ownership. Burchett v. Louisa Light & Power Company, 235 Ky. 296, 31 S. W. (2d) 373."

The foregoing considerations make it apparent that the pleadings in this case amply justify the judgment rendered, and there being no other questions before the court, it follows that the judgment must be, and is, hereby affirmed.